FILED

**NOT FOR PUBLICATION**

AUG 02 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDUCATION LOGISTICS, INC., a Montana corporation; LOGISTICS MANAGEMENT, INC., a Washington corporation, <br><br> Plaintiffs - Appellants, <br><br> v. <br><br> LAIDLAW TRANSIT, INC., a Delaware corporation, <br><br> Defendant - Appellee. | No. 09-35601 <br><br> D.C. No. 9:07-cv-00006-DWM <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted June 7, 2010
Portland, Oregon

Before: HALL, FERNANDEZ and McKEOWN, Circuit Judges.

Education Logistics and Logistics Management, Inc. ("Edulog") appeal from

the grant of summary judgment to Laidlaw Transit, Inc. in this action arising from

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

a claimed breach of a 1992 contract (" the Agreement") to license software for routing student bus transportation services. Reviewing *de novo*, we affirm in part, reverse in part, and remand for further proceedings.

The district court concluded that the parties' duty to promote and facilitate each other's business, contained in Section 2.3.3 of the Agreement, did not survive the termination of the exclusive license in 1997. The court based its conclusion primarily on a specific reference within Section 2.2, the exclusive license provision, subjecting it to Section 2.3, and the absence of such a reference in the non-exclusive license provision, Section 2.1. Interpreting the agreement as a matter of law, we conclude the promotion duty survives the exclusive license period. Nothing in Section 2.3.3 explicitly or implicitly provides that the promotion duty applies only to the exclusive license provision; correspondingly, the non-exclusive license provision, Section 2.1, does not provide that it is exempt from the promotion duty provision. See Mont. Code. Ann. § 28-3-303. When read as a whole, the Agreement does not require a specific reference to another provision in order for that provision to affect obligations within the provision being interpreted. See Mont. Code Ann. § 28-3-202.

Further, while Section 2.3 includes the duty to promote under Section 2.3.3, it also contains other duties, for example the "no contact" duty under Section 2.3.2

2

and the "avoid conflicts" and "prevent breaches by agents" duties under Section 2.3.3. Common sense and a plain reading of the Agreement dictate that these core duties—which are not provided for elsewhere in the Agreement—would continue during the perpetual non-exclusive license period. Consequently, interpreting Section 2.2 to require the termination of the Section 2.3.3 promotion duty would force an unnatural reading of the remainder of Section 2.3. See Mont. Code Ann. § 28-3-307. We conclude that summary judgment in favor of Laidlaw is not warranted on the basis articulated by the district court, namely that the promotion duty claims accrued following the exclusive license period.

Section 23.0 provides that the Agreement "shall be governed by any applicable provisions" of the Montana Uniform Commercial Code ("MUCC") "[e]xcept to the extent that the provisions of this Contract are clearly inconsistent" with that application. We agree with the district court that the MUCC's four-year statute of limitations applies. See Mont. Code. Ann. § 30-2-725.

The parties' intention that the MUCC governs whenever applicable is clear from the language of the contract alone. See Mont. Code. Ann. § 28-3-303. Additionally, the MUCC's limitations provision governing contracts for sale serves as a more specific provision than Montana's eight-year limitations provision for contracts generally. See Mont. Code. Ann. § 1-2-102; 27-2-202; 30-2-7205; see

3

also, e.g., In re MSR Exploration Ltd., 147 B.R. 560, 568 (D.Mont. 1992). The Section 23.0 language designating the MUCC as governing law is explicit, and does not involve an absurdity. See Mont. Code. Ann. § 28-3-41; Ophus v. Fritz, 11 P.3d 1192, 1196 (Mont. 2000). Edulog's claim that a substantive provision offering relief under the MUCC must be identified before the MUCC's statute of limitations provision may be applied is unsupported. Application of the MUCC limitations provision is not "clearly inconsistent" with the provisions of the Agreement, and thus the MUCC four-year statute of limitations applies.

Edulog filed this suit on January 11, 2007. Following summary judgment on the promotion duty, the district court concluded that all of Edulog's remaining claims accrued before January 11, 2003, and granted summary judgment to Laidlaw on statute of limitations grounds. We agree that the record is replete with evidence that a number of alleged breaches of the Agreement occurred well before January 2003. Although discovery is not required to trigger the MUCC limitations period, it bears noting that there is also ample evidence Edulog was aware of these potential breaches long before January 2003. See Mont. Code. Ann. § 30-2-725(2). However, the district court does not appear to have considered whether new breaches for which Edulog may recover may have occurred within the limitations period. The Agreement is properly characterized as a contract with

4

continuing obligations capable of distinct and separate breaches.  See Minidoka

Irrigation Dist. v. Dep't of Interior, 154 F.3d 924, 926 (9th Cir. 1998).  For

example, Laidlaw's duty to pay royalties arises whenever a "New Bus" enters

service.  Laidlaw, which has continued to perform under the Agreement, has not

demonstrated a total repudiation of the Agreement.  Edulog, on the other hand, has

submitted evidence raising a genuine issue of material fact whether Laidlaw has

engaged in new breaches of the contract since January 11, 2003.  Summary

judgment was not appropriate for breaches Edulog alleges occurred since that date.

See Sands v. Nestegard, 646 P.2d 1189, 1193 (Mont. 1982).  We affirm the grant

of summary judgment as to all claims accruing prior to January 11, 2003, including

promotion duty claims, and reverse and remand for further proceedings as to

claims accruing on or following that date.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.  Each**

**party shall pay its own costs on appeal.**

***Education Logistics Inc v Laidlaw Transit Inc 09-35601***

Hall, J., concurring in part and dissenting in part

I agree with the majority that the Montana UCC's four-year statute of limitations applies and that the district court improperly granted summary judgment as to breach of contract claims accruing on or after January 11, 2003. I do not agree, however, that Laidlaw's duty to promote and facilitate Edulog's business under Section 2.3.3 of the Agreement survived the expiration of the exclusive license.

Section 2.2 of the Agreement explicitly conditions Laidlaw's exclusive license on the terms of Section 2.3 of the Agreement, which includes the duty to promote Edulog's software. Section 2.1 of the Agreement places no limitations on Laidlaw's perpetual non-exclusive license. If Section 2.3 of the Agreement were to apply to both the non-exclusive license and the exclusive license, there would be no need to include the express limitation in Section 2.2. It seems unlikely that the parties would draft two adjacent provisions, include an express limitation in just one provision, yet intend that that limitation would apply to both provisions. It also seems unlikely that the parties would see the need to expressly cross-reference a duty to promote in the context of a five-year exclusive license but would omit such a reference in the context of creating the same duty in perpetuity.

All of the provisions of Section 2.3 appear compatible only with an

exclusive arrangement between Edulog and Laidlaw. Section 2.3.1 refers to "Retention of Rights by LMI During the Currency of *Exclusive* License" and refers only to Section 2.2 of the Agreement. Section 2.3.2 (the "no contact" duty referenced by the majority) provides Laidlaw the exclusive right to market to its own customers and limits Edulog's ability to contact Laidlaw's customers directly. This provision only makes sense if Laidlaw has an exclusive license to market Edulog's software. Once the exclusive license expires, Edulog is free to provide its software to competing school bus providers, who in turn would be free to contact Laidlaw's customer base.

The mutual promotion and facilitation duties in Section 2.3.3 itself make little sense if, under the perpetual non-exclusive license, Edulog may freely license its software to Laidlaw's competitors. Section 2.3.3 obligates (1) Edulog and Laidlaw to work together to minimize potential conflicts and define respective markets; (2) Edulog to use its best efforts to promote Laidlaw bus services; (3) Laidlaw to use its best efforts to promote Edulog software; and (4) both parties to ensure that employees and contractors do not contravene the Agreement. Once Edulog begins serving Laidlaw's competitiors—who presumably would attempt to infiltrate Laidlaw's market—Edulog loses any real ability to insulate Laidlaw from competition. If Edulog is unable to meaningfully fulfill the obligations set forth in

2.3.3 upon the expiration of the exclusive license, it seems unlikely that the parties would have intended for Laidlaw to actively promote Edulog software in perpetuity.

The most reasonable interpretation of the Agreement is that the duty to promote in Section 2.3.3 only applies for the duration of the exclusive license set forth in Section 2.2. I therefore dissent in part.